Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
Christopher D. Moon (SBN 246622)
Email: cmoon@kamberlaw.com
**KAMBERLAW, LLP**
9404 Genesee Avenue, Suite 340
La Jolla, California 92037
Phone: 310.400.1051
Fax: 212.202.6364

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRITTANY SEBASTIAN, individually, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>KIMBERLY-CLARK CORPORATION; KIMBERLY-CLARK WORLDWIDE, INC.; and KIMBERLY-CLARK GLOBAL SALES, LLC,<br><br>Defendants. | **Case No.:** '17CV442  WQHJMA<br><br>**CLASS ACTION COMPLAINT FOR**<br><br>**1.  UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 *ET SEQ.*);**<br>**2.  DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF.CODE §§ 17500, *ET SEQ.*);**<br>**3.  CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, *ET SEQ.*);**<br>**4.  BREACH OF EXPRESS WARRANTY; AND**<br>**5.  UNJUST ENRICHMENT.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Brittany Sebastian, individually and on behalf of others similarly situated, by and through her undersigned counsel, hereby files this Class Action Complaint against Defendants Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "Defendant" or "Kimberly-Clark") and states as follows:

## NATURE OF THE ACTION

1.      This case arises out of Defendant's unlawful merchandising practices with respect to its Huggies Natural Care Baby Wipes, which are offered for sale in numerous configurations, including soft packages containing 32 or 56 wipes, "pop-up tubs" containing 40 or 64 wipes, "Clutch n' Clean" packages, and refill packages containing numerous wipes (collectively, the "Products"). Defendant falsely and deceptively labels and advertises the Products as being "natural," "gentle," "hypoallergenic," and made with the "simplest formula for a gentle clean." Contrary to these material representations and omissions, the Products contain non-natural, synthetic chemical ingredients, and Defendant's claims are therefore false, deceptive and misleading.

2.      Among other synthetic ingredients, the Products contain phenoxyethanol. The U.S. Food and Drug Administration ("FDA") has stated that phenoxyethanol is "a preservative that is primarily used in cosmetics and medications" and that can "depress the central nervous system and may cause vomiting and diarrhea" in infants. In addition, the French Agence Nationale de Securite du Medicament et des Produits de Sante has cautioned consumers not to use wipes containing phenoxyethanol on children under the age of three because of health concerns related to "reproductive and developmental toxicity."

3.      Plaintiff Brittany Sebastian ("Plaintiff") brings this action individually and on behalf of those similarly situated. Plaintiff seeks to represent a National Class and a California Subclass (defined *infra*.). Plaintiff seeks damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and

2

disgorgement of all benefits Defendant has enjoyed from its unlawful and/or deceptive business practices, as detailed herein. In addition, Plaintiff seeks injunctive relief to stop Defendant's unlawful conduct in the labeling and marketing of the Products. Plaintiff makes these allegations based on her personal knowledge as to herself and her own acts and observations and, otherwise, on information and belief based on investigation of her counsel.

## JURISDICTION AND VENUE

4.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

5.     This Court has personal jurisdiction because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through its sales of the Products to California consumers.

6.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Moreover, a substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District. *See also* Declaration of Brittany Sebastian Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached hereto as Exhibit A.

## PARTIES

7.     Plaintiff Brittany Sebastian is a resident of San Diego, California, who purchased Huggies Natural Care wipes during the class period, as described below. Plaintiff's claim is typical of all Class members in this regard. In addition, the advertising and labeling on the package of the Product purchased by Plaintiff is typical of the advertising and labeling of the Products purchased by members of the Class.

**CLASS ACTION COMPLAINT**

8.     Defendant Kimberly-Clark Corporation is a Delaware corporation with its principal place of business at 401 North Lake Street, Neenah, Wisconsin 54956.

9.     Defendant Kimberly-Clark Worldwide, Inc. and Defendant Kimberly-Clark Global Sales, LLC are Delaware corporations with principal offices at 351 Phelps Drive, Irving, Texas 75038.   Upon information and belief, Kimberly-Clark Worldwide, Inc. and Kimberly-Clark Global Sales, LLC are wholly-owned subsidiaries of Defendant Kimberly-Clark Corporation.

10.     Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.  The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents, and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged herein.

## FACTUAL ALLEGATIONS

**A.     Contrary to Defendant's Representations that the Products Are Natural, the Products Contain Numerous Synthetic Ingredients, Including Phenoxyethanol, Which Is Potentially Toxic to Babies**

11.     Kimberly-Clark manufactures, markets, promotes, advertises, and sells baby-care products, including under the "Huggies Natural Care" brand name. According to the huggies.com website, the Products are "America's #1 branded baby wipe," and are comprised of "gentle ingredients" for "sensitive skin."

12.     Seeking to profit from consumers' desire for safer and natural products free from synthetic and harmful ingredients, Kimberly-Clark markets and labels the Products as, among other things "natural," "gentle" and "hypoallergenic."

13.     Kimberly-Clark also advertises the Products as being "[h]ypoallergenic, fragrance and alcohol free, with a touch of aloe and Vitamin E, these wipes feature our simplest formula ever for a gentle clean."

**Gentle ingredients**
Hypoallergenic, fragrance and alcohol free, with a touch of aloe and Vitamin E, these wipes feature our simplest formula ever for a gentle clean.
Click here for more information on Huggies® ingredients.

14.    Further, on the packaging of the Products, Defendant represents the Products as being natural, both by the prominent representation "Natural Care" and by the Products' various packaging designs, which include nature images, such as green coloring and leaves.



15.    Despite advertising the Products as being "natural," "gentle," "hypoallergenic" and made with a "simple formula," the wipes actually contain non-natural, synthetic, and/or artificial ingredients, including phenoxyethanol, caprylyl glycol, cocamidopropyl betaine, and sodium citrate.

**CLASS ACTION COMPLAINT**

Huggies® Natural Care® Wipes

| Solution Ingredients | Purpose |
| --- | --- |
| Water/Eau/Aqua | Helps clean skin |
| Phenoxyethanol | Helps keep wipes fresh |
| Butoxy PEG-4 PG-Amodimethicone | Helps wipe glide across baby's skin |
| Aloe Barbadensis Leaf Extract | Aloe Vera |
| Caprylyl Glycol | Helps keep skin soft and smooth |
| Cocamidopropyl Betaine | Helps clean skin |
| Malic Acid | Helps keep the wipes pH balanced |
| Sodium Citrate | Helps keep sheet white |
| Tocopheryl Acetate | Vitamin E |

16.    According to the FTC, phenoxyethanol is a preservative, which can depress the central nervous system and may cause vomiting and diarrhea in infants.[1]

17.    In addition, the FTC charged several companies with falsely claiming in online advertisements that their products were all-natural or 100% natural when those products contained non-natural, synthetic ingredients, including phenoxyethanol.[2]  The charged companies were barred from making similar representations in the future.[3]

_____

[1] http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/2008/ucm116900.htm (last accessed Nov. 17, 2016).

[2] https://www.ftc.gov/news-events/press-releases/2016/04/four-companies-agree-stop-falsely-promoting-their-personal-care/ (last accessed Nov. 17, 2016); https://www.ftc.gov/system/files/documents/cases/160412shikai-cmpt.pdf; (last accessed Nov. 17, 2016); https://www.ftc.gov/system/files/documents/cases/160412rockymountaincmpt.pdf; (last accessed Nov. 17, 2016); https://www.ftc.gov/system/files/documents/cases/160412edenbodyworkscmpt.pdf; (last accessed Nov. 17, 2016); https://www.ftc.gov/system/files/documents/cases/160412beyondcoastalcmpt.pdf; (last

18.     Furthermore, a May 2012 report from the French Agence Nationale de Securite du Medicament et des Produits de Sante cautioned consumers not to use wipes containing phenoxyethanol on children under the age of three because of health concerns related to "reproductive and developmental toxicity."

19.     The Material Safety Data Sheet (MSDS) on phenoxyethanol states that it can cause skin and lung irritation, and that it may also be toxic to the kidneys, nervous system, and liver, and repeated, long-term exposure can cause organ damage.  The MSDS further states that the toxic effects can occur through inhalation, skin exposure, and ingestion.

20.     According to Hazard Notifications from the Globally Harmonized System of Classification and Labeling of Chemicals (GHS), phenoxyethanol presents a category 2 danger for skin irritation, a category 4 danger for acute oral toxicity if swallowed, and a category 2A danger for causing serious eye damage or eye irritation.

21.     In addition to phenoxyethanol, the Products contain other synthetic ingredients.

22.     Caprylyl glycol is a synthetic skin conditioning agent and preservative. As with phenoxyethanol, the FTC previously charged several companies with falsely claiming in advertisements that their products were all-natural or 100% natural when those products contained non-natural, synthetic ingredients, including caprylyl glycol. The charged companies were barred from making similar representations in the future.

23.     Cocamidopropyl betaine is a synthetic surfactant that has been associated with skin irritation and allergic dermatitis.  In fact, cocamidopropyl betaine was named Allergen of the Year in 2004 by the American Contact Dermatitis Society.

---

accessed Nov. 17, 2016);
https://www.ftc.gov/system/files/documents/cases/160412californianaturelcmpt-exhibits.pdf (last accessed Nov. 17, 2016).

[3] https://www.ftc.gov/news-events/press-releases/2016/07/ftc-approves-four-final-orders-barring-companies-making-false-all/ (last accessed Nov. 17, 2016).

**CLASS ACTION COMPLAINT**

24.    Sodium citrate is a synthetic chemical that can be used as an emulsifier, acidity regulator, and preservative.    Sodium citrate is recognized in Federal Regulations as a synthetic.[4]

25.    Accordingly, because the Products contain phenoxyethanol, caprylyl glycol, cocamidopropyl betaine, and sodium citrate, they are mislabeled, misleading, and misbranded under both federal and state law.

26.    7 U.S.C. § 6502(21) defines the term "synthetic" as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes."

27.    Furthermore, Merriam-Webster defines "natural" as "existing in or produced by nature: not artificial."

28.    In addition, the FTC has cautioned that "[m]arketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers.  If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact."[5]

29.    Reasonable consumers, including Plaintiff, expect a product that is labeled or advertised as being "natural" to be free of synthetic, highly processed, and/or non-natural ingredients.

30.    Likewise, reasonable consumers, including Plaintiff, expect that baby care products that are labeled or advertised as being "natural," "gentle" and "hypoallergenic" to be free from harmful and/or potentially toxic ingredients.

---

[4] *See* 7 C.F.R. §205.605(b).

[5] Guides for the Use of Environmental Marketing Claims, 75 FR 63552-01, 63586 (Oct. 15, 2010).

**CLASS ACTION COMPLAINT**

31.    Consumers have become increasingly concerned about the effects of synthetic ingredients in personal-care products.  Indeed, consumers, including Plaintiff, are willing to pay, and have paid, a premium for products advertised, marketed, and labeled as "natural" over products containing non-natural, synthetic ingredients.[6]

32.    Kimberly-Clark materially misled and failed to adequately inform consumers, including Plaintiff, that the Products contain non-natural, synthetic ingredients.

33.    Based on Defendant's uniform material misrepresentations and omissions, consumers have purchased the Products to their detriment.

**B.    Plaintiff Purchased the Misbranded Product**

34.    Plaintiff Brittany Sebastian purchased a soft package of Huggies Natural Care wipes, containing 32 wipes, from a Target store in Encinitas, California between August and November, 2016 for approximately $1.47.  Plaintiff purchased the Product for personal and family use.

35.    Plaintiff relied on Kimberly-Clark's representations in making the decision to purchase the Product, including that the Product is "natural."

36.    At the time Plaintiff purchased the Product, Plaintiff did not know, and had no reason to know, that the Product labels and advertising were misleading, deceptive and unlawful as set forth herein.  Plaintiff would not have purchased the Product, or would have purchased it on different terms, if she had known the truth.

37.    It is possible, however, that Plaintiff would purchase the Products in the future if they were properly labeled, and/or the ingredients complied with the labeling and advertising statements, including that they only contained "natural" ingredients, and no longer contained phenoxyethanol, caprylyl glycol, cocamidopropyl betaine, and sodium citrate.

---

[6]    In 2010, for example, nationwide sales of natural products totaled $117 billion. http://www.npainfo.org/NPA/About_NPA/NPA/AboutNPA/AbouttheNaturalProductsAssociati on.aspx?hkey=8d3a15ab-f44f-4473-aa6e-ba27ccebcbb8 (last visited Jan. 25, 2017).

**CLASS ACTION COMPLAINT**

1

## **CLASS DEFINITION AND CLASS ALLEGATIONS**

2

38.    Plaintiff brings this action as a class action pursuant to Federal Rules of

3

Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself, on behalf of all others

4

similarly situated, and as a member the Class defined as follows (collectively, the

5

"Class"):

6

All citizens of the United States who, within the relevant statute

7

of limitations periods, purchased Defendant's Products ("Nationwide Class");

8

All citizens of California who, within four years prior to the

9

filing of this Complaint, purchased Defendant's Products ("California Subclass").

10

39.    Excluded from the Class are: (i) Defendant, its assigns, successors, and

11

legal representatives; (ii) any entities in which Defendant has controlling interests;

12

(iii) federal, state, and/or local governments, including, but not limited to, their

13

departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or

14

subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a

15

bankruptcy discharge in the last three years; and (v) any judicial officer presiding over

16

this matter and person within the third degree of consanguinity to such judicial officer.

17

40.    Plaintiff reserves the right to amend or otherwise alter the class definition

18

presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in

19

response to facts learned through discovery, legal arguments advanced by Defendant,

20

or otherwise.

21

41.    This action is properly maintainable as a class action pursuant to Federal

22

Rule of Civil Procedure 23 for the reasons set forth below.

23

42.    **Numerosity**:  Members of the Class are so numerous that joinder of all

24

members is impracticable.  Upon information and belief, the Class consist of hundreds

25

of thousands of purchasers dispersed throughout the United States, and the Subclass

26

likewise consists of hundreds of thousands of purchasers throughout the State of

27

California.  Accordingly, it would be impracticable to join all members of the Class

28

before the Court.

10

43.    **Common Questions Predominate:**    There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

- Whether, contrary to Defendant's uniform, material representations and omissions, the Products are not natural;
- Whether, contrary to Defendant's uniform, material representations and omissions, the Products are not comprised of "gentle ingredients," and/or hypoallergenic;
- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling its Products;
- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq*.; Cal. Bus. & Prof. Code § 17500, *et seq*.; and the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;
- Whether Defendant committed a breach of express warranty;
- Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;
- Whether Plaintiff and the Class members have sustained damage as a result of Defendant's unlawful conduct;
- The proper measure of damages sustained by Plaintiff and Class Members; and
- Whether Defendant was unjustly enriched by its deceptive practices.

44.    **Typicality:** Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class Member's claims arise from the same practices and course of conduct and are based on the same legal theories.

**CLASS ACTION COMPLAINT**

45. **Adequacy:** Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the members of the Class Plaintiff seeks to represent. Plaintiff will fairly and adequately protect the interests of members of the Class and has retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

46. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a. The claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

c. Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

d. When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e. This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class can

12

1   seek redress for the harm caused to them by Defendant.

2   47.   Because Plaintiff seeks relief for all members of the Class, the prosecution
3   of separate actions by individual members would create a risk of inconsistent or
4   varying adjudications with respect to individual members of the Class, which would
5   establish incompatible standards of conduct for Defendant.

6   48.   The prerequisites to maintaining a class action for injunctive or equitable
7   relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to
8   act on grounds generally applicable to the Class, thereby making appropriate final
9   injunctive or equitable relief with respect to the Class as a whole.

10   49.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P.
11   23(b)(3) are also met as questions of law or fact common to Class members
12   predominate over any questions affecting only individual members, and a class action
13   is superior to other available methods for fairly and efficiently adjudicating the
14   controversy.

15   50.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are
16   likely to be encountered in the management of this action that would preclude its
17   maintenance as a class action.

18   ## CAUSES OF ACTION

19   ### FIRST CAUSE OF ACTION
20   **Unfair and Unlawful Business Acts and Practices**
     **(Business and Professions Code § 17200, *et seq*.)**
21   **(*for the California Subclass*)**

22   51.   Plaintiff re-alleges and incorporates by reference the allegations contained
23   in the preceding paragraphs of this complaint, as though fully set forth herein.

24   52.   Defendant's conduct constitutes an unfair business act and practice
25   pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL").
26   The UCL provides, in pertinent part:  "Unfair competition shall mean and include
27   unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or
28   misleading advertising . . . ."

**CLASS ACTION COMPLAINT**

53.    Plaintiff brings this claim seeking equitable and injunctive relief to stop Defendant's misconduct, as complained of herein, and to seek restitution of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices described herein.

54.    Defendant's knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

55.    Defendant's conduct was and continues to be unfair and fraudulent because, directly or through its agents and employees, Defendant made uniform materially false representations and omissions that the Products were "natural," "gentle," and "hypoallergenic," when in fact they were not.

56.    Defendant is aware that the representations and omissions it has made about the Products were and continue to be false and misleading.

57.    Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

58.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

59.    Defendant's misrepresentations of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

60.    Defendant's conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.    This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

61.    In addition, Defendant's conduct was, and continues to be, unfair, in that its injury to countless purchasers of the Products is substantial, and is not outweighed by any countervailing benefits to consumers or to competitors.

62.    Moreover, Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Defendant's uniform, material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading. Plaintiff purchased the Products in reliance on the representations made by Defendant, as alleged herein.

63.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

64.    As a result of the business acts and practices described above, Plaintiff and members of the California Subclass, pursuant to § 17203, are entitled to an Order enjoining such future wrongful conduct on the part of Defendant and such other Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

65.    Pursuant to Civil Code § 3287(a), Plaintiff and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct.  The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the California Subclass are entitled to interest in an amount according to proof.

**CLASS ACTION COMPLAINT**

## SECOND CAUSE OF ACTION
### Deceptive Advertising Practices
### (California Business & Professions Code §§ 17500, *et seq*.)
### (*for the California Subclass*)

66.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

67.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . . ."

68.    Defendant violated § 17500 when it represented, through its false and misleading advertising and other express representations, that Defendant's Products possessed characteristics and value that they did not actually have.

69.    Defendant's deceptive practices were specifically designed to induce reasonable consumers like Plaintiff to purchase the Products.  Defendant's uniform, material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its uniform representations and omissions were untrue and misleading.  Plaintiff purchased the Products in reliance on the representations made by Defendant, as alleged herein.

70.    Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Subclass members.

71.    The above acts of Defendant, in disseminating material misleading and deceptive representations and statements throughout California to consumers, including Plaintiff and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of § 17500.

72.    In making and disseminating the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in

16

violation of § 17500.

73.    Defendant continues to engage in unlawful, unfair and deceptive practices in violation of §17500.

74.    As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the California Subclass, pursuant to § 17535, are entitled to an Order of this Court enjoining such future wrongful conduct on the part of Defendant, and requiring Defendant to disclose the true nature of its misrepresentations.

75.    Plaintiff and members of the California Subclass also request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

**THIRD CAUSE OF ACTION**
**Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq.*)**
**(*for the California Subclass*)**

76.    Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

77.    Plaintiff brings this action pursuant to California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

78.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

79.    The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

80.    Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

**CLASS ACTION COMPLAINT**

81.    Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

82.    Purchase of the Products by Plaintiff and members of the California Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

83.    Kimberly-Clark  violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the Products are falsely labeled and advertised as being, among other things, "natural," "gentle," and "hypoallergenic."  Defendant knew that consumers will often pay more for products with these attributes and has unfairly profited from its false and misleading claims.

84.    Similarly, Kimberly-Clark violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by falsely and deceptively labeling and advertising the Products as, among other things, "natural," "gentle," and "hypoallergenic."

85.    In addition, Kimberly-Clark violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are falsely labeled and advertised as, among other things, "natural," "gentle," and "hypoallergenic."

86.    Defendant's uniform, material, representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

87.    Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of facts that Defendant suppressed and failed to disclose; and, Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

88.     Plaintiff and members of the California Subclass have been directly and proximately injured by Defendant's conduct.  Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at the prices at which they were offered.

89.     Given that Defendant's conduct violated § 1770(a)(5), Plaintiff and members of the California Subclass are entitled to seek and seek injunctive relief to put an end to Defendant's violations of the CLRA.

90.     Moreover, Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers to increase the sale of the Products.

91.     Pursuant to California Civil Code § 1782(a), Plaintiff on her own behalf, and on behalf of members of the California Subclass, notified Defendant of the alleged violations of the Consumer Legal Remedies Act.  Despite giving Defendant 30-days from the date of the notification letter to provide appropriate relief for violations of the CLRA, Defendant has failed to provide any such relief.  As such, Plaintiff also seeks compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and requests that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

92.     Plaintiff further requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

## FOURTH CAUSE OF ACTION
### Breach of Express Warranty
### (for the Nationwide Class and California Subclass)

93.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint, as though fully set forth herein.

19

94.     By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Product's packaging, and through its marketing and advertising, as described above.    This labeling and advertising constitutes express warranties and became part of the basis of the bargain between Plaintiff and members of the Class, and Defendant.

95.     Defendant purports, through its advertising, to create express warranties that the Products are, among other things, "natural," "gentle" and "hypoallergenic."

96.     Despite Defendant's express warranties about the nature of the Products, the ingredients in the Products are not natural, gentle and/or hypoallergenic and the Products were, therefore, not what Defendant represented them to be.

97.     Accordingly, Defendant breached express warranties about the Products and their qualities because the Products do not conform to Defendant's affirmations and promises.

98.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products.    Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### Unjust Enrichment
### (for the Nationwide Class and California Subclass)

99.     Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

100.    By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

101.    Defendant had knowledge of such benefits.

102. Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

103. Defendant's acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions.

104. Equity cannot in good conscience permit Defendant to be economically enriched for such actions at the expense of Plaintiff and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required

## **PRAYER**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

A. For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class and Subclass; and naming Plaintiff's attorneys as Class Counsel to represent the Class and Subclass;

B. For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiff and the Class for all causes of action;

D. For an order requiring Defendant to immediately cease and desist from selling its misbranded Products in violation of law; enjoining Defendant from continuing to label, market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

E. For an order awarding attorneys' fees and costs;

F. For an order awarding punitive damages;

G. For an order awarding pre-and post-judgment interest; and

**CLASS ACTION COMPLAINT**

H. For such other and further relief as the Court deems just and proper.

DATED:  March 3, 2017                          **KAMBERLAW, LLP**

                                By:  /s/ Naomi B. Spector
                                     Naomi B. Spector
                                     *Attorney for Plaintiff*

**CLASS ACTION COMPLAINT**