1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**

9                          **SOUTHERN DISTRICT OF CALIFORNIA**

10  BRITTANY SEBASTIAN,                    CASE NO. 17cv442-WQH-JMA
    individually, on behalf of herself and
11  other similarly situated; ASHLEY       ORDER
    LYNNE POPOWITZ, individually, on
12  behalf of herself and others similarly
    situated,
13
                              Plaintiffs,
14
        v.
15  KIMBERLY-CLARK
    CORPORATION; KIMBERLY-
16  CLARK WORLDWIDE, INC.;
    KIMBERLY-CLARK GLOBAL
17  SALES, LLC,

18                             Defendants.

19  HAYES, Judge:

20          The matter before the Court is the motion to dismiss the first amended complaint,

21  or in the alternative, the motion to stay the case, filed by Kimberly-Clark Corp.,

22  Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC.  (ECF No.

23  14)

24  **I. BACKGROUND**

25          On March 3, 2017, Plaintiffs Brittany Sebastian and Ashley Lynne Popowitz

26  commenced this action by filing a complaint.  (ECF No. 1).  On March 29, 2017,

27  Plaintiffs filed the first amended complaint ("FAC").  (ECF No. 8).  Plaintiffs assert the

28  following causes of action against Kimberly-Clark Corporation, Kimberly-Clark

    Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (hereinafter, "Defendant"):

(1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (2) violation of California's False Advertising Laws ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.; (4) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §§ 501.201, *et seq*.; (5) breach of express warranty; and (6) quasi-contract. (ECF No. 8 at 1).

On April 28, 2017, Defendant filed a motion to dismiss the FAC and a request for judicial notice. (ECF Nos. 14, 15). On May 16, 2017, Plaintiffs filed a response in opposition. (ECF No. 17). On May 23, 2017, Defendant filed a reply. (ECF No. 18).

## II. ALLEGATIONS OF THE COMPLAINT

Defendant "manufactures, markets, promotes, advertises, and sells baby-care products, including [products] under the 'Huggies Natural Care' brand name." (ECF No. 8 at ¶ 12). "This case arises out of Defendant's unlawful merchandising practices with respect to its Huggies Natural Care Baby Wipes, which are offered for sale in numerous configurations," including the following: (1) "soft packages containing 32 or 56 wipes," (2) "'pop-up tubs' containing 40 or 64 wipes," (3) "'Clutch n' Clean' packages," and (4) "refill packages containing numerous wipes."[1]  *Id*. at ¶ 1. The huggies.com website provides that "the Products are 'America's #1 branded baby wipe,' and are comprised of 'gentle ingredients' for 'sensitive skin.'" *Id*.

Defendant "advertises the Products as being '[h]ypoallergenic, fragrance and alcohol free, with a touch of aloe and Vitamin E," providing that the wipes "feature [] [Defendant's] simplest formula ever for a gentle clean.'" *Id*. at ¶ 14. "On the packaging of the Products, Defendant represents the Products as being natural, both by the prominent representation 'Natural Care' and by the Products' various packaging designs, which include nature images, such as green coloring and leaves." *Id*. at ¶ 15.

Plaintiff Sebastian "purchased a soft package of Huggies Natural Care wipes,

---

[1] The FAC refers to these configurations of the Huggies Natural Care Baby Wipes line as the "Products." (ECF No. 8 at ¶12).

containing 32 wipes, from a Target store in Encinitas, California between August and November, 2016 for approximately $1.47." *Id*. at ¶ 35. Plaintiff Popowitz "purchased multiple soft packages of Huggies Natural Care wipes from Publix and Costco locations in Broward County, Florida" for personal and family use. *Id*. at ¶ 36. On or about October 2016, she purchased a 56-count package. *Id*.

"Despite advertising the Products as being 'natural,' 'gentle,' 'hypoallergenic' and made with a 'simple formula,' the wipes actually contain non-natural, synthetic, and/or artificial ingredients, including phenoxyethanol, caprylyl glycol, cocamidopropyl betaine, and sodium citrate." *Id*. at ¶ 16. "According to the FDA, phenoxyethanol is a preservative, which can depress the central nervous system and may cause vomiting and diarrhea in infants." *Id*. at ¶ 17. "The Material Safety Data Sheet (MSDS) on phenoxyethanol states that it can cause skin and lung irritation, and that it may also be toxic . . . ." *Id*. at ¶ 20. "[A] report from the French Agence Nationale de Securite du Medicament et des Produits de Sante cautioned consumers not to use wipes containing phenoxyethanol on children under the age of three because of health concerns related to 'reproductive and developmental toxicity.'" *Id*. at ¶ 19. "According to Hazard Notifications from the Globally Harmonized System of Classification and Labeling of Chemicals (GHS), phenoxyethanol presents a category 2 danger for skin irritation, a category 4 danger for acute oral toxicity if swallowed, and a category 2A danger for causing serious eye damage or eye irritation." *Id*. at ¶ 21.

Caprylyl glycol is a non-natural, "synthetic skin conditioning agent and preservative." *Id*. at ¶ 23. "Cocamindopropyl betaine is a synthetic surfactant that has been associated with skin irritation and dermatitis." *Id*. at ¶ 24. "Sodium citrate is recognized in Federal Regulations as a synthetic, and is a "chemical that can be used as an emulsifier, acidity regulator, and preservative." *Id*. at ¶ 25.

"[R]easonable consumers, including Plaintiffs, expect a product that is labeled or advertised as being 'natural' to be free of synthetic, highly processed, and/or non-natural ingredients." *Id*. at ¶ 30. "[R]easonable consumers . . . expect . . . baby care

products that are labeled or advertised as being 'natural,' 'gentle' and 'hypoallergenic' to be free from harmful and/or potentially toxic ingredients." *Id*. at ¶ 31.

"[B]ecause the Products contain phenoxyethanol, caprylyl glycol, cocamidopropyl betaine, and sodium citrate, they are mislabeled, misleading, and misbranded." *Id*. at ¶ 26. Defendant "materially misled and failed to adequately inform consumers . . . that the Products contain non-natural, synthetic ingredients." *Id.* at ¶ 33.

Plaintiffs relied on Defendant's "representations in making the decisions to purchase the Products, including [the representation] that the Product is 'natural.'" *Id*. at ¶ 37. At the time of purchase, Plaintiffs "did not know, and had no reason to know, that the Product labels and advertising were misleading, deceptive, and unlawful. . . ." *Id*. at ¶ 38. Plaintiffs "would not have purchased the Products, or would have purchased the same on different terms, if they had known the truth." *Id*. "It is possible, however, that Plaintiffs would purchase the Products in the future if the Products were properly labeled, and/or the ingredients complied with the labeling and advertising statements, including that they only contained 'natural' ingredients, and no longer contained phenoxyethanol, caprylyl glycol, and cocamidopropyl betaine, and sodium citrate." *Id*. at ¶ 39.

Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves, on behalf of all other similarly situated, and define three classes. *Id.* at ¶ 40. Plaintiffs bring their UCL, FAL, and CLRA claims for the California subclass, the FDUTPA claim for the Florida subclass, and the breach of express warranty and quasi-contract claims for the California subclass, Florida subclass and the nationwide class. *Id.* at 14-23.

## III. REQUEST FOR JUDICIAL NOTICE

When ruling on a 12(b)(6) motion, "as a general rule, a district court may not consider any material beyond the pleadings." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, there are exceptions to this general rule that allow a court to consider extrinsic evidence without converting a 12(b)(6) motion to one of

summary judgment. *Id.* Under the doctrine of incorporation by reference, "[a] district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleadings." *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (internal quotation marks omitted). The "incorporation by reference" doctrine has been extended "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Defendant requests the Court take judicial notice of the following five documents: (1) a page from the Huggies website that both describes and displays photos of the Huggies Natural Care Baby Wipes in Exhibit A, (2) a page from the Kimberly-Clark website that lists the ingredients to the various brands of Huggies wipes, including an assortment of Huggies Natural Care Wipes in Exhibit B, (3) a notice letter from Plaintiffs' council alleging violations of California's Consumers Legal Remedies Act ("CLRA") in Exhibit C, (4) a page from the Food and Drug Administration (FDA) website regarding the FDA's use of the term "hypoallergenic" in Exhibit D, and (5) a page from a website titled The Dermatologist that reviewed allergen's of the year from 2000 to 2015, including cocamindopropyl betaine in Exhibit E. (ECF No. 15-1).

With respect to Exhibit C, the CLRA notice letter, Plaintiffs reference the letter in the Complaint. *See* ECF No. 8 at ¶ 93. Plaintiffs have not filed any opposition to the request for judicial notice or disputed the authenticity of this letter. The Court takes judicial notice of Exhibit C pursuant to the doctrine of incorporation by reference. *See, e.g.*, *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355 JCS, 2013 WL 1632697, at *2 n.2 (N.D. Cal. Apr. 16, 2013) (taking judicial notice of a CLRA notice letter under the incorporation by reference doctrine). The Court denies Defendant's request for judicial notice as to the remaining exhibits as unnecessary to the resolution of this

motion. *See Asvesta v. Petroutsas*, 580 F.3d 1000, 1010 n.12 (9th Cir. 2009) (denying request for judicial notice where judicial notice would be "unnecessary").

## IV. MOTION TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

When reviewing a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F. 3d 962, 969 (9th Cir. 2009) (quotations omitted).

Claims sounding in fraud or mistake must additionally comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted). "To comply

with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and internal quotations omitted). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106.

## B. Theory of Misrepresentation

Defendant contends that Plaintiffs' claims fail because they "rest on a facially implausible theory of consumer deception." (ECF No. 14 at 2; ECF No. 14-1 at 14-15). Defendant contends that "Huggies Natural Care Wipes make no false or deceptive representations" on the packaging or in the challenged advertisements. *Id*. at 15. Defendant contends that no reasonable consumer could expect that mass-produced, disposable baby wipes would not include traces of synthetic ingredients and preservatives. *Id*. at 16-17. Defendant contends that no reasonable consumer could be misled by the statements made on the product's packaging. *Id*. at 20. Defendant contends interpreting the term "natural" to mean "100% natural" is contrary to federal policy. *Id*. at 18. Defendant contends that the terms "Gentle," and "Simple Formula" are statements of nonactionable puffery. *Id*. at 20. Defendant contends that the term "hypoallergenic" is factually accurate and complies with FDA guidance regarding use of the word. *Id*. at 20-21.

Plaintiffs contend that the FAC properly pleads facts sufficient to demonstrate consumer deception. (ECF No. 17 at 11-12). Plaintiffs contend that the terms "hypoallergenic" and "gentle," and the phrase "feature our simplest formula ever for a gentle clean" are not statements of mere puffery. *Id*. at 15-16. Plaintiffs contend that use of the term "natural" can be misleading regardless of whether the advertisement uses a qualifier such as "All Natural or "100% Natural." *Id*. at 17-18. Plaintiffs contend that reasonable consumers expect that baby care products advertised as

"natural," "gentle," and "hypoallergenic" will be free from harmful or potentially toxic ingredients. *Id.* at 15-16. Plaintiffs contend that the various terms and packaging design support a representation that the wipes contain no non-natural or synthetic ingredients when read in context and taken as a whole. *Id.* at15-16. Plaintiffs contend that even if the term "Natural Care" is a trade name, it can still mislead reasonable consumers. *Id.* at 17-18.

To assess claims under consumer protection laws, California and Florida courts apply the reasonable consumer test, which requires a party to establish that a reasonable person is likely to be deceived. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Democratic Republic of the Congo v. Air Capital Grp., LLC*, 614 F. App'x 460, 470 (11th Cir. 2015); *Hammock v. Nutramarks, Inc.*, No. 15CV2056 BTM (NLS), 2016 WL 4761784, at *3 (S.D. Cal. Sept. 12, 2016). Whether a business practice is deceptive is generally a question of fact for the jury to decide. *Williams*, 552 F.3d at 939; *see also Nature's Prods., Inc. v. Natrol, Inc.*, 990 F.Supp. 2d 1307, 1322 (S.D. Fla. Oct. 7, 2013). The Ninth Circuit has held that "generalized, vague and unspecific assertions constitut[e] mere 'puffery' upon which a reasonable consumer [cannot] rely." *Glen Holy Entertainment, Inc. v. Tektronix Inc*, 343 F.3d 1000, 1015 (9th Cir. 2003); *see also Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013) ("[M]ere puffery or sales talk is not sufficient to create an express warranty.").

In this case, Plaintiffs allege that Defendant "markets and labels the product" as "natural,", "gentle," and "hypoallergenic." (ECF No. 8 at ¶13). Plaintiffs allege Defendant "advertises the products as being '[h]ypoallergenic, fragrance and alcohol free, with a touch of aloe and Vitamin E, these wipes feature our simplest formula ever for a gentle clean.'" *Id.* at ¶ 14 (internal quotations omitted). Plaintiffs allege that "on the packaging of the Products, Defendant represents the Products as being natural, both by the prominent representation 'Natural Care' and by the Products' various packaging designs, which include nature images, such as green coloring and leaves." *Id.* at ¶ 15.

Plaintiffs allege that reasonable consumers expect a product labeled "natural" to "be free of synthetic, highly-processed, and/or non-natural ingredients." Plaintiffs allege that reasonable consumers "expect that baby care products that are labeled or advertised as being 'natural,' 'gentle,' and 'hypoallergenic' to be free from harmful and/or potentially toxic ingredients." *Id.* at ¶ 31. Plaintiffs allege that the wipes contain "non-natural, synthetic, and/or artificial ingredients." *Id.* at ¶ 16.

Representations made on the label or in advertisements of the Huggies Natural Care Baby Wipes may be misleading and deceptive even though the representations do not directly contradict the ingredients listed on the label. *See Williams*, 552 F.3d at 939; *In re Ferrero Litigation*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011). Further, the Court concludes that the statements "simple formula" and "gentle" are not mere puffery in the context of this litigation about alleged misrepresentations regarding the ingredients in baby wipes. *See Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) ("A statement is considered puffery if the claim is extremely unlikely to induce consumer reliance. Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim."). The Court concludes that this is not the rare situation where granting a motion to dismiss Plaintiff's claims regarding deceptive advertising is appropriate. The Court concludes that Plaintiffs have alleged sufficient facts to support an inference that a reasonable consumer would be deceived by the advertising and packaging of Huggies Natural Care Baby Wipes products. *See also Jou v. Kimberly-Clark Corp.*, No. C-13-03075 JSC, 2013 WL 6491158, at *10 (N.D. Cal. Dec. 10, 2013) ("by labeling these wipes as 'Natural Care,' and superimposing that term on an image of a green leaf, it is plausible that a reasonable consumer would likely be led to believe that the wipes contained only natural ingredients."); *Brenner v. Procter & Gamble Co.*, No. SACV161093JLSJCG, 2016 WL 8192946, at *5 (C.D. Cal. Oct. 20, 2016) ("The Pampers Natural Clean product packaging–which includes the phrase 'Natural Clean' in large, greenish text against a green background and individual green packages labeled 'Natural Clean' with

depictions of flowering plants–reinforces the inference that a consumer could be misled . . .").

## C. Standing

### 1. Products Never Purchased and Statements Never Seen

Defendant  contends that Plaintiffs have not alleged facts sufficient to establish standing for claims related to products they never purchased. (ECF No. 14-1 at 22). Defendant contends Plaintiffs lack standing to bring claims related to the other configurations of Huggies Natural Care wipes because they purchased only the soft packages of Huggies Natural Care wipes.  *Id.*  Defendant contends that Plaintiffs have not pled sufficient facts to establish that the different categories of products in the product line are substantially similar.  *Id.*  Defendant further contends that Plaintiffs lack standing because their claims are "based on unseen website[]" statements, including the terms "gentle" and "simplest formula."  (ECF No. 14-1 at 24).

Plaintiffs contend that they have pled sufficient facts to establish standing by alleging that their claims arise out of Defendants' product line, of which they purchased soft packages of Huggies Natural Care Wipes.  (ECF No. 17 at 19). Plaintiffs contend that the products in the Huggies Natural Care product line and the misrepresentations about the products are substantially similar.  *Id.*

"In the Ninth Circuit, there is 'no controlling authority' on whether a plaintiff in a class action has standing to assert claims based on products he did not purchase." *Morales v. Unilever U.S., Inc.*, Civ. No. 2:13-2213 WBS EFB, 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012)); *see also Granfield v. NVIDIA Corp.*, No. C 11–05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); *Allen v. Similason Corp.*, No. 12CV0376, 2013 WL 2120825, at *4 (S.D. Cal. May 14, 2013) ("[W]hether a class representative may be allowed to present claims

on behalf of others who have similar, but not identical, interests depends not on standing, but on an assessment of typicality and adequacy of representation."). "The majority of courts . . . hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase as long as the products and alleged misrepresentation are substantially similar." *Dorfman v. Nutramax Labs., Inc.*, No. 13-cv-873 WQH (RBB), 2013 WL 5353043, at \*6 (S.D. Cal. Sept. 23, 2013) (quoting *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)). "In these . . . cases, the courts have found that analyzing the issue of standing when there are similarities between the products is better accomplished under Rule 23 at the time of class certification." *Dabish v. Brand New Energy, LLC*, No. 16CV400 BAS (NLS), 2016 WL 7048319, at \*2 (S.D. Cal. Dec. 5, 2016); *see, e.g.*, *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 992 (E.D. Cal. 2012).

In this case, Plaintiffs allege that "Defendant manufactures, markets, promotes, advertises, and sells baby-care products, including [products] under the 'Huggies Natural Care' brand name." (ECF No. 8 at ¶ 12). Plaintiffs allege that this action arises out Defendant's Huggies Natural Care Baby Wipes, which are offered for sale in the following configurations: (1) "soft packages containing 32 or 56 wipes," (2) "'pop-up tubs' containing 40 or 64 wipes," (3) "'Clutch n' Clean' packages," and (4) "refill packages containing numerous wipes." *Id*. at ¶ 1. Plaintiffs allege that they purchased soft packages of Natural Care Wipes containing 32 and 56 wipes. *Id.* at ¶¶ 35-36. Plaintiffs' allegations regarding the misrepresentations in advertising and labeling encompass all of the configurations of Huggies Natural Care Baby Wipes. *See id.* at ¶¶ 1,13-16. Plaintiffs allege that the various configurations of the Huggies Natural Care Baby Wipes contain the same "non-natural, synthetic, and/or artificial ingredients." *Id.* at ¶¶16, 22, 26.

The Court finds that Plaintiffs have alleged sufficient similarities between the different configurations of Huggies Natural Care Baby Wipes products and the alleged misrepresentations about the Huggies Natural Care Baby Wipes products to avoid

dismissal at this stage of the proceedings.[2]  Any contentions regarding differences between the products or representations about the products are best addressed at the class certification stage under Rule 23.

## 2. Injunctive Relief

Defendant contends that Plaintiffs lack standing to pursue injunctive relief because Plaintiffs allege a mere possibility that they would purchase Huggies Natural Care wipes in the future.  (ECF No. 18 at 11).  Defendant contends that there is no actual and immediate threat that Plaintiffs will purchase the product again because they are now aware of the ingredients in the wipes.  (ECF No. 18 at 11).  Plaintiffs contend that they pled facts sufficient to pursue injunctive relief because they alleged that they would purchase the wipes again.  (ECF No. 8 at 10).

To have standing to pursue prospective injunctive relief, Article III of the United States Constitution requires a plaintiff to "demonstrate a real and immediate threat of repeated injury in the future."  *Chapman v. Pier I Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).  To establish standing for prospective injunctive relief, Plaintiff must demonstrate that "he has suffered or is threatened with a 'concrete and particularized' legal harm . . . coupled with 'a sufficient likelihood that he will again be wronged in a similar way."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).  Plaintiff "must establish a 'real and immediate threat of repeated injury.'"  *Id.* (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).  Resolving a split among district courts applying California's consumer protection laws, the Ninth Circuit Court of Appeals recently addressed the issue of standing to seek an injunction against false advertising or labeling in *Davidson v. Kimberly-Clark*, 873 F.3d 1103 (9th Cir. 2017).  In *Davidson v. Kimberly-Clark*, the Court considered whether a plaintiff bringing suit under

---

[2] Further, viewed in the light most favorable to the Plaintiffs, the allegations of the FAC do not support Defendant's assertion that Plaintiffs did not see certain statements on the website.  The FAC lists statements in advertisements and product packaging and states that Plaintiffs relied on these to make their purchasing decision. (ECF No. 8 at ¶¶ 13-16, 37).

California consumer protection laws for alleged misrepresentations regarding flushable wipes had standing to seek injunctive relief. The Court stated,

> We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. . . . Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. . . . In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 1115. The Court then determined that the plaintiff in *Davidson* sufficiently alleged standing based in part on allegations that the plaintiff "continues to desire to purchase wipes that are suitable for disposal in a household toilet" and "would purchase truly flushable wipes that are suitable for disposal in a household toilet." *Id.* at 1116.

In this case, Plaintiffs seek injunctive relief and allege, "It is possible . . . that Plaintiffs would purchase the Products in the future if the Products were properly labeled, and/or the ingredients complied with the labeling and advertising statements, including that they only contained 'natural' ingredients, and no longer contained phenoxyethanol, caprylyl glycol, cocamidopropyl betaine, and sodium citrate." (ECF No. 8 at ¶¶ 24, 39). The Court concludes that viewed in the light most favorable to Plaintiffs and under the recent authority from the Ninth Circuit Court of Appeals, Plaintiffs allege sufficient facts to establish standing to seek injunctive relief.

**D. Pre-suit Notice Under the CLRA**

Defendant contends that the Court must dismiss without leave to amend claims for damages under the CLRA related to the term "hypoallergenic" or ingredients other than phenoxyethanol because Plaintiff Sebastian failed to comply with the requisite notice requirements under the CLRA with respect to these terms. (ECF No. 14-1 at 26). Defendant contends that the notice letter challenged use of the terms "gentle" and "natural" but failed to challenge the term "hypoallergenic." *Id.* Defendant contends

that Plaintiff's notice letter does not sufficiently identify specific ingredients other than phenoxyethanol. *Id*. at 26-27. Plaintiffs contend that the notice letter complied with the specificity required for a CLRA claim for damages. (ECF No. 17 at 23).

The CLRA provides for the following remedies: (1) actual damages; (2) injunctive relief; (3) restitution of property; (4) punitive damages; and (5) any other relief that the court deems proper. Cal. Civ. Code § 1780(a). Section 1782(a) of the CLRA provides for a thirty-day pre-filing notice requirement in "an action for damages." Cal. Civ. Code § 1782(a). Section 1782(b) and (c) provide that an "action for damages" may not be maintained if the potential defendant takes certain corrective action in response to the plaintiff's notice. Cal. Civ. Code § 1782(b), (c). "The notice must specify the 'particular alleged violations' of the CLRA and demand that the person 'correct, repair, replace or otherwise rectify' the alleged violations." *Allen*, 2013 WL 5436648, at *2 (citing Cal. Civ. Code § 1782). Section 1782(d) provides that an action for injunctive relief is not subject to the pre-suit notice requirement. Cal. Civ. Code § 1782(d). Claims for restitution and disgorgement qualify as "action[s] for damages." *See Reed v. Dynamic Pet Prod.*, No. 15CV0987-WQH-DHB, 2015 WL 4742202, at *7 (S.D. Cal. July 30, 2015).

In this case, Plaintiff's notice letter states, under a heading titled "Violation of California Consumer Protection Statutes," that "the Products are labeled 'natural' and 'gentle,' but contain ingredients, including phenoxyethanol, which are not natural." (ECF No. 15-1 at 18). In the FAC, in addition to phenoxyethanol, Plaintiffs identify caprylyl glycol, cocamidopropyl betaine, and sodium citrate as non-natural ingredients. (ECF No. 14-1 at 5). In the notice letter and the FAC, Plaintiffs allege that the terms "natural" and "gentle" are the violations of the CLRA because of the presence of the non-natural ingredients in the Huggies Natural Care Baby Wipes. The Court concludes that, under the facts of this case as alleged in the FAC, the CLRA did not require Plaintiff Sebastian to identify caprylyl glycol, cocamidopropyl betain, or sodium citrate in the notice letter.

With respect to the term "hypoallergenic," the notice letter uses the term when initially describing how Huggies Natural Care wipes are advertised. (ECF No. 15-1 at 17). The notice letter states, "The Products are advertised as being '[h]ypoallergenic, fragrance and alcohol free, with a touch of aloe and Vitamin E, these wipes feature our simplest formula ever for a gentle clean.'" *Id.* However, the term is not stated again in the letter and the letter does not specifically identify that this term was a "particular alleged violation" as it does with the terms "natural," "gentle," and "clean." *Allen*, 2013 WL 5436648, at *2 (determining that plaintiffs' notice failed to specifically allege that "100% Natural" and "Preservative free" violated provisions of the CLRA). Accordingly, the Court grants the motion to dismiss the CLRA claim with respect to any monetary damages, restitution, or disgorgement arising from use of the term "hypoallergenic."

**E. Breach of Express Warranty[3]**

Defendant contends that Plaintiffs' claim for breach of express warranty fails under both California and Florida law because it does not establish the exact terms or existence of an express warranty. (ECF No. 14-1 at 27). Defendant states that "gentle" and "simple formula" statements are statements of superiority and non-actionable puffery. *Id.* at 28. Defendant further contends that under Florida law Plaintiff Popowitz failed to sufficiently allege privity and pre-suit notice to Defendant. (ECF No. 14-1 at 27-28). Plaintiffs contend that numerous courts have determined that use of the term "natural" on consumer product labels constitutes an express warranty. (ECF No. 17 at 24). Plaintiffs further contend that under Florida law, privity is not required in the context of breach of warranty cases "alleging the misleading use of the term 'natural.'" *Id.* at 25. Plaintiffs contend that Florida law does not require pre-suit notice when the

---

[3] With respect to the breach of express warranty and quasi-contract claims, Defendant asserts that the motion addresses only the laws of Plaintiffs' home states because the laws applicable to the nationwide class are too varied to address in one motion. (ECF No. 14-1 at 27, 29). Plaintiffs assert that this argument is "premature and should be addressed at class certification stage" rather than an "early motion to dismiss." (ECF No. 17 at 25 n.7).

defendant is a manufacturer instead of a seller and that under Florida law, express warranties are created only "by the seller." *Id.*

Under the California Commercial Code section 2313, "[t]o prevail on a breach of express warranty claim, a plaintiff must prove that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 893 (C.D. Cal. 2013); *see also Long v. Graco Children's Products Inc.*, Case No. 13-cv-1257-WHO, 2013 WL 4655763, at * 12 (N.D. Cal. Aug. 26, 2013); *In re Ferrero Litigation*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011). Similarly, to state a claim for breach of express warranty under Florida law, "a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty." *Jovine v. Abbott Laboratories, Inc.*, 795 F. Supp. 2d 1331, 1340–41 (S.D. Fl. 2011).

In this case, Plaintiffs allege that through its advertising Defendant expressly warranted the Huggies Natural Care Products as "natural," "gentle," and "hypoallergenic." (ECF No. 8 at ¶ 111). Plaintiffs allege that "[d]espite Defendant's express warranties . . . the ingredients in the Products are not natural, gentle, and/or hypoallergenic, and the Products were . . . not what Defendant represented them to be." *Id.* at ¶ 112. Plaintiffs allege that they relied on these representations in purchasing the product and were harmed "in the amount of the purchase price they paid for the product." *Id.* at ¶¶ 37, 114. The Court concludes that Plaintiffs' allegations regarding Defendant's use of the terms "natural," "gentle,"[4] and "hypoallergenic" are sufficient to demonstrate that Defendants made "affirmation[s] of fact of fact or promise[s] or

---

[4] The Court has concluded that the terms "gentle" and "simple formula" are not puffery under the facts of this case involving the ingredients in and representations of baby wipes. However, it is not clear that the breach of express warranty claim is predicated on the "simple formula" statement. *See* ECF No. 8 at ¶ 111.

provided a description of its goods." *See Viggiano*, 944 F. Supp. 2d at 894. The Court concludes that Plaintiffs have alleged sufficient facts to permit a reasonable inference that an express warranty exists. Further, Plaintiffs have alleged sufficient facts to infer that Plaintiffs relied on Defendant's warranties and Defendant's breach of those warranties caused Plaintiffs' injuries. The Court concludes that Plaintiffs allege sufficient facts to state a claim for a breach of express warranty under California law. *See, e.g.*, *Brenner*, 2016 WL 8192946, at *7-8 (concluding that "natural" labels can constitute express warranties).

Defendant contends that the breach of express warranty fails under Florida law for two additional reasons: failure to provide pre-suit notice and lack of privity. (ECF No. 14-1 at 29). To plead a cause of action for breach of express warranty under Florida law, plaintiffs must allege that they provided pre-suit notice to the seller of the breach. Florida's Uniform Commercial Code provides, "[t]he buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a); *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. Dist. Ct. App. 1977). Courts have reached different conclusions as to the pre-suit notice requirement where the defendant is not the seller. Some courts have determined that the law requires notice to a defendant manufacturer. *See, e.g.*, *Jovine*, 795 F. Supp. 2d at 1339-40; *Lamb v. Graco Children's Prod. Inc.*, No. 4:11CV477-RH/WCS, 2012 WL 12871963, at *2 (N.D. Fla. Jan. 24, 2012). Other courts have held that the plain language of the statute requires pre-suit notice only to a defendant seller. *See, e.g.*, *Federal Ins. Co. v. Lazzara Yachts of North America, Inc.*, No. 8:09CV607-T-27MAP, 2010 WL 1223126 (M.D. Fla. Mar. 25, 2010).

In *Jovine v. Abbott Laboratories*, the Florida district court dismissed consumers' claims against an infant formula manufacturer because the consumers failed to give notice. 795 F. Supp. 2d at 1339-40. In *Lamb v. Graco*, the district court dismissed breach of express warranty claims in which consumers alleged that defendant

manufacturers had "warranted that the car seat conformed to federal safety standards" for lack of pre-suit notice to manufacturers because "[t]he reason for requiring notice applies to a manufacturer every bit as much as to a seller." 2012 WL 12871963 at *1-2; *see also Nichols v. Wm Wrigly Jr. Co.*, No. 10-80759-CIV-COHN, 2011 WL 181458 (S.D. Fla. Jan. 19, 2011) (breach of express warranty claim dismissed against manufacturer for lack of notice in consumer class action based on alleged misrepresentations on packages of gum). By contrast, in *Federal Insurance v. Co. Lazzara Yachts*, an insurance company subrogated to the rights of its insured filed a breach of express warranty action against the manufacturer of a yacht following the alleged malfunction of the vessel's marine fire suppression system. 2010 WL 1223126 at *1. The court determined that the plain language of the Florida Uniform Commercial Code required "notice to seller of breach" and that "[t]he plain language of the statute therefore does not require notice to a manufacturer." *Id.* at *5.

In this case, Plaintiffs bring the breach of express warranty claim as consumers who purchased products premised on misleading or deceptive content on Defendant's advertisements and product packaging. (ECF No. 8). The Court concludes that these facts are analogous to Florida cases in which courts have concluded that notice was required to defendant-manufacturers in breach of express warranty actions. *See Jovine*, 795 F. Supp. 2d at 1335, 1339-30; *Lamb*, 2012 WL 12871963 at *1. Further, this Court finds persuasive the rationale offered by the court in *Lamb*: "[T]he point of the notice requirement is to allow the warrantor an opportunity to cure the problem rather than defend a lawsuit. The reason for requiring notice applies to a manufacturer every bit as much as to a seller." *Id.* at *2; *see also Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. Dist. Ct. App. 1980) ("The notice enables 'the seller to make adjustments or replacements or to suggest opportunities for cure to the end of minimizing the buyer's loss and reducing the sellers' own liability to the buyer.' The notice requirement also protects the seller's right to inspect the goods."). The Court concludes that, under the facts of this case, Florida law required Plaintiffs to provide

notice to Defendant. The motion to dismiss the breach of express warranty claim under Florida law is granted.

### F. Quasi-Contract

Defendant contends that Plaintiffs fail to state a claim for quasi-contract because "Plaintiffs fail to allege that [Defendant] was obligated to do, and failed to do, something in exchange for" the benefit that Defendant retained. (ECF No. 14-1 at 29). Defendant further contends that Plaintiffs' claim fails under Florida law because Plaintiffs did not *directly* confer a benefit to Defendant. *Id*. at 30. Plaintiffs contend that they properly pled their claim under California and Florida law, and that Defendant is misinterpreting Florida law. (ECF No. 17 at 26-27).

#### 1. California

In *Astiana v. Hain Celestial Grp., Inc.*, the Ninth Circuit Court of Appeals determined that the plaintiffs stated a claim for quasi-contract where the plaintiffs alleged that they were "entitled to relief. . . because [Defendant] 'enticed' plaintiffs to purchase their products through 'false and misleading' labeling, and that [Defendant] was 'unjustly enriched' as a result." 783 F.3d 753, 762 (9th Cir. 2015).

In this case, Plaintiffs allege that they relied on Defendant's misleading advertising scheme when they purchased Huggies Natural Care wipes and that they "would not have purchased the Products, or would have purchased the same on different terms, if they had known the truth." (ECF No. 8 at ¶¶ 37-38). Plaintiffs allege that they "conferred a benefit on Defendant in the form of the purchase price of the Products." *Id*. at ¶ 116. Plaintiffs allege that Defendant benefitted through revenue generated from the sales of the Huggies Natural Care baby wipes products. *Id*. at ¶¶ 118-119. Plaintiffs allege that this benefit is "inequitable and unjust because the benefit was obtained by Defendant's fraudulent and misleading representations and omissions." *Id*. at ¶ 119. The Court concludes that Plaintiffs have alleged sufficient facts to state a claim for quasi-contract under California law.

#### 2. Florida

"The essential elements that must be shown to prove unjust enrichment[5] under Florida law are a benefit conferred on the defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for it to retain the benefit without paying the value thereof." *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 994 (C.D. Cal. 2015). In *Kopel v. Kopel*, the Florida Supreme Court held that "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." No. SC13-992, 2017 WL 372074, at *5 (Fla. Jan. 26, 2017) (citing *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla. N.A.*, 667 So.2d 876, 879 (Fla. Dist. Ct. App. 1996)); *see also Johnson v. Catamaran Health Solutions, LLC*, 687 F. App'x 825, 830 (11th Cir. 2017) (affirming dismissal of an unjust enrichment claim for failure to plead a direct benefit where the plaintiffs alleged that they "conferred a benefit on [the defendant] by paying membership fees to [a third party], who in turn paid premiums to [the defendant]"). *But see Williams v. Wells Fargo Bank N.A.*, No. 11–21233, 2011 WL 4368980, at *9 (S.D. Fla. Sept. 19, 2011) (holding that "just because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants—but instead passed through a third party—does not preclude an unjust-enrichment claim . . .").

In this case, Plaintiffs allege that they "conferred a benefit on Defendant in the form of the purchase price of the Products." (ECF No. 8 at ¶118). However, Plaintiffs allege that they purchased the products from Target, Publix, and Costco locations, rather than from Defendant. *Id.* at ¶¶ 35-36. The Court concludes that Plaintiffs fail to allege sufficient facts to establish that they directly conferred a benefit onto Defendant. The motion to dismiss the claim for quasi-contract under Florida law is granted.

## V. MOTION TO STAY

Alternatively, Defendant contends that the Court should stay this action under the

---

[5] Under Florida law, "[a] quasi-contract . . . is synonymous with unjust enrichment." *See, e.g.*, *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. Dist. Ct. App. 2010).

primary jurisdiction doctrine. (ECF No. 14-1 at 30). Defendant contends that the underlying question of what constitutes a "natural" cosmetic is within the jurisdiction of the FDA. *Id*. at 30-31. Defendant contends that invoking primary jurisdiction would not needlessly delay resolution of Plaintiffs' claims. *Id*. at 31. Plaintiffs contend that the Court should not stay this matter pursuant to the primary jurisdiction doctrine because a determination regarding the term "natural" is not a current priority of the FDA. (ECF No. 17 at 28-29).

"Primary jurisdiction is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana*, 783 F.3d at 760 (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). The doctrine allows a federal court to abstain from deciding a case within its subject matter jurisdiction if it determines that the "initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co., Ltd., v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). The application of the doctrine of primary jurisdiction is "committed to the sound discretion of the court." *Id*. at 781 (citing *United States v. General Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)). "[C]ourts in considering the issue have traditionally employed such factors as (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Id*. "[C]ourts must also consider whether invoking primary jurisdiction would needlessly delay the resolution of claims." *Astiana*, 783 F.3d at 760. "Under [Ninth Circuit] precedent, 'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Id*. (citing *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1165 (9th Cir. 2007)).

In *Astiana*, the plaintiffs brought an action claiming that they were deceived into

purchasing cosmetic products which contained synthetic and artificial ingredients despite being advertised as "All Natural," "Pure Natural," or "Pure, Natural & Organic." 783 F.3d at 756. The Ninth Circuit Court of Appeals considered whether the district properly dismissed the claims under the primary jurisdiction doctrine. *Id.* at 759. The Court of Appeals determined that the district court did not err in invoking primary jurisdiction and stated, "Without doubt, defining what is 'natural' for cosmetics labeling is both an area within the FDA's expertise and a question not yet addressed by the agency." *Id.* at 760-61. However, the Court of Appeals reversed the district court for dismissing, rather than staying, the case on primary jurisdiction grounds. The Court instructed that on remand the district court "may consider" whether events during the pendency of the appeal, including communications from the FDA, "demonstrate that another referral to the agency would be futile." *Id.* at 762.

On remand, the district court denied the motion to stay based on primary jurisdiction grounds, citing a letter the plaintiffs received from the FDA. *Astiana v. Hain Celestial Grp., Inc.*, No. 11-CV-6342-PJH, 2015 WL 13333579, at *1–2 (N.D. Cal. Oct. 9, 2015). In the letter, the FDA stated that defining "natural" did "not fit within [the FDA's] current health and safety priorities," and "respectfully decline[d] to make a determination regarding the term 'natural' in cosmetic labeling at [that] time." *Id*. at *1. The district court denied the motion to stay because the FDA letter demonstrated that "the agency is aware of but has expressed no interest in the subject matter of the litigation." *Id*. (quoting *Astiana*, 783 F.3d at 761).

In this case, Plaintiffs' claims also involve the definition of the word "natural" for purposes of cosmetic labeling. This Court determines that a stay pursuant to the primary jurisdiction doctrine is improper because the FDA "is aware of but has expressed no interest in" the issues involving the use of the term "natural" in cosmetic labeling.[6]

---

[6] The FDA's November 2015 request for comments cited by Defendants is limited to "the use of the tern 'natural' in the labeling of food products" rather than the labeling of cosmetic products. *Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments*, 80 FR 69905-01. The Court

*Astiana*, 783, F.3d at 760.  Further, invoking the primary jurisdiction doctrine would "needlessly delay the resolution of the claims" at issue in this action.  *Id.* At this stage in proceedings, the Court does not exercise its discretion to stay this matter under the primary jurisdiction doctrine.  *See, e.g.*, *Brenner*, No. 2016 WL 8192946, at *9 ("[A] stay under the primary jurisdiction doctrine would be improper because the FDA is aware of the controversy surrounding 'natural'-branded cosmetics but has chosen not to prioritize the issuance of any definition of the term.").  The motion to stay is denied.

## VI. CONCLUSION

IT IS HEREBY ORDERED that the motion to dismiss (ECF No. 14) filed by Defendant is GRANTED IN PART and DENIED IN PART.  Defendant's motion to dismiss is GRANTED as to the breach of express warranty claim brought under Florida law, the quasi-contract claim brought under Florida law, and the CLRA claim with respect to any monetary damages, restitution, or damages arising from use of the term "hypoallergenic."  The motion to dismiss is DENIED in all other respects.  Plaintiffs may file any motion for leave to file an amended complaint pursuant to Local Civil Rules 7.1 and within thirty (30) days of the date this Order is issued.

IT IS FURTHER ORDERED that Defendant's motion to stay is DENIED.  (ECF No. 14).

DATED:  December 18, 2017

**WILLIAM Q. HAYES**
United States District Judge

concludes that this is not applicable to Plaintiffs' claims which relate to the packaging of cosmetic products rather than food products.